IN CLERK'S OFFICE
U.S. DISTRICT COURT
E.D.N.Y.
* OCTOBER 8, 2024 *
BROOKLYN OFFICE

JPL/TJT:PJC
F. #2022R00297

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------- X

UNITED STATES OF AMERICA

    - against -

ZAKIA KHAN,
ANSIR ABASSI,
    also known as "Zaib Abassi" and
    "Ansir Zaib,"
ELAINE ANTAO,
    also known as "Aleena,"
OMNEAH HAMDI,
AMRAN HASHMI,
AHSAN IJAZ,
SEEMA MEMON and
MANAL WASEF,

            Defendants.

-------------------------- X

INDICTMENT

Cr. No. **24-CR-409**
(T. 18, U.S.C., §§ 371, 982(a)(1),
982(a)(7), 982(b)(1), 1347, 1349,
1956(a)(1)(B)(i), 1956(h), 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 42,
U.S.C., § 1320a-7b(b)(2)(B))
**Judge Ann M. Donnelly**
**Magistrate Judge Robert M. Levy**

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Medicaid

    1.    Medicaid was a federal and state health care program that provided

benefits to individuals and families who met specified financial and other eligibility

requirements, and certain other individuals who lacked adequate resources to pay for medical

care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the

United States Department of Health and Human Services, was responsible for overseeing

Medicaid in participating states, including New York State.   Individuals who received benefits under Medicaid were referred to as "recipients."

2.       Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and as referenced in Title 18, United States Code, Section 1347, and Title 42, United States Code, Section 1320a-7b.

3.       Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965.   Each state established and administered its own Medicaid program and determined the type, amount, duration and scope of services covered within broad federal guidelines.

4.       Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services.   By submitting a claim, the provider certified, among other things, that the services were rendered to the patient and were medically necessary, and were not rendered as a result of kickbacks or bribes.

5.       Medicaid in New York State ("New York Medicaid") was administered by the New York State Department of Health (the "New York DOH").   The New York DOH approved certain managed long term care ("MLTC") plans to provide managed care to New York Medicaid recipients with long-lasting health issues or disabilities.   Each MLTC plan had its own network of health care providers.   New York Medicaid managed care providers who were within an MLTC network did not bill Medicaid directly, but instead billed the MLTC plan for services provided to their recipients.

6.     New York Medicaid MLTC services included social adult day care services.   The term "social adult day care" ("SADC") described a structured program that provided older adults with functional impairments socialization, supervision, personal care and nutrition services in a protective setting.   An SADC center would, for example, provide a space where its members were able to congregate and socialize by talking, playing card or board games, listening to music, singing karaoke or participating in other activities under the supervision of SADC center staff who were trained to provide assistance to people with mobility and other health issues.   Healthy meals, as well as transportation to and from the day care, might also be provided.

7.     Medicaid MLTC services also included home health services, including those arranged through the Consumer Directed Personal Assistance Services Program ("CDPAP"), which allowed Medicaid recipients to hire family members or friends as their home health aides.   Medicaid recipients who required assistance with activities of daily living were eligible for home health care through CDPAP.   CDPAP services were paid for by Medicaid and the MLTC plans through a financial intermediary ("FI"), which had an employment relationship with the Medicaid recipient's home health aide.

8.     Medicaid and the MLTC plans paid for claims only if the items or services were medically reasonable, medically necessary, documented and actually provided as represented and not induced by illegal kickbacks and bribes.

II.     The Defendants and Relevant Entities and Individuals

9.     The defendant ZAKIA KHAN was an owner of Happy Family Social Adult Day Care Center, Inc. ("Happy Family"), Family Social Adult Day Care Center, Inc. ("Family Social") and Responsible Care Staffing, Inc. ("Responsible Care"), which were located

in Brooklyn, New York, and Tanwee Services Inc. ("Tanwee Services"), which was located at the same address as Family Social.

10.     The defendant ANSIR ABASSI, also known as "Zaib Abassi" and "Ansir Zaib," was an employee of the defendant ZAKIA KHAN and an owner of A Hameed Abassi Corp. ("Abassi Corp."). Abassi Corp. maintained a bank account ending in 6708 at Financial Insitution-1 (the "Abassi Corp. Account"), an entity the identity of which is known to the Grand Jury. ABASSI was a signatory on the Abassi Corp. Account.

11.     The defendant ELAINE ANTAO, also known as "Aleena," was an owner of A.N. All Type Services Inc. ("All Type Services"), and with the defendant ZAKIA KHAN, was a co-owner of Aleena Ventures, Inc. All Type Services maintained a bank account ending in 8742 at Financial Institution-2 (the "All Type Services Account"), an entity the identity of which is known to the Grand Jury. ANTAO was a signatory on the All Type Services Account.

12.     The defendant OMNEAH HAMDI was an employee of the defendant ZAKIA KHAN and an owner of Eyeconic World LLC ("Eyeconic"). Eyeconic maintained a bank account ending in 9591 at Financial Insitution-1 (the "Eyeconic Account"). HAMDI was a signatory on the Eyeconic Account.

13.     The defendant AMRAN HASHMI was an employee of the defendant ZAKIA KHAN.

14.     The defendant AHSAN IJAZ was an owner of Happy Family, Family Social and Responsible Care.

15.     The defendant SEEMA MEMON was an employee of the defendant ZAKIA KHAN.

16.     The defendant MANAL WASEF was an employee of the defendant ZAKIA KHAN.

17.     Co-Conspirator-1, an individual whose identity is known to the Grand Jury, purported to be a CDPAP home health aide for Responsible Care.

18.     Co-Conspirator-2, an individual whose identity is known to the Grand Jury, controlled RIIA Consulting LLC ("RIIA"), which purported to be a consulting business.

19.     Co-Conspirator-3, an individual whose identity is known to the Grand Jury, worked for Happy Family and Family Social.

20.     Individual-1, an individual whose identity is known to the Grand Jury, was a New York Medicaid recipient.

21.     Happy Family and Family Social were registered as New York Medicaid managed care providers and were providers of SADC services for New York Medicaid MLTC plans.  Happy Family maintained a bank account ending in 5271 at Financial Institution-1 (the "Happy Family Account").   The defendants ZAKIA KHAN and AHSAN IJAZ were signatories on the Happy Family Account.

22.     Responsible Care was a CDPAP FI located in Brooklyn, New York. Responsible Care maintained a bank account ending in 3287 at Financial Institution-3 (the "Responsible Care Account"), an entity the identity of which is known to the Grand Jury.   The defendants ZAKIA KHAN and AHSAN IJAZ were signatories on the Responsible Care Account.

23.     FI-1, an entity the identity of which is known to the Grand Jury, was an FI located in Brooklyn, New York.

24.     MLTC Plan-1, an entity the identity of which is known to the Grand Jury, was an MLTC plan that operated in New York.   MLTC Plan-1 approved Individual-1 for CDPAP services.   Responsible Care billed MLTC Plan-1 for CDPAP services purportedly provided to its members.

III.     The Fraudulent Scheme

25.     In or about and between October 2017 and July 2024, the defendants ZAKIA KHAN, ANSIR ABASSI, ELAINE ANTAO, OMNEAH HAMDI, AMRAN HASHMI, AHSAN IJAZ, SEEMA MEMON and MANAL WASEF, together with others, engaged in a scheme whereby they (i) paid kickbacks and bribes in the form of cash to Medicaid recipients to induce them to enroll in SADC and CDPAP services, (ii) paid kickbacks and bribes to induce recruiters to refer Medicaid recipients to enroll with Happy Family, Family Social and Responsible Care, (iii) received kickbacks and bribes in exchange for the referral of Medicaid recipients to Happy Family, Family Social and Responsible Care, and (iv) submitted and caused the submission of false and fraudulent claims to Medicaid MLTC plans for SADC and CDPAP services that were medically unnecessary, not provided and/or were induced by the payment and receipt of illegal kickbacks and bribes.

26.     In furtherance of the scheme, the defendants ZAKIA KHAN and AHSAN IJAZ, together with others, signed contracts and related documents with MLTC plans, including MLTC Plan-1, to register Happy Family and Family Social as SADC service providers and Responsible Care as a CDPAP FI.   In these agreements, KHAN and IJAZ agreed to comply with all applicable laws and regulations.

27.     In or about and between October 2017 and July 2024, the defendants ZAKIA KHAN, ANSIR ABASSI, ELAINE ANTAO, OMNEAH HAMDI, AMRAN HASHMI,

AHSAN IJAZ, SEEMA MEMON and MANAL WASEF, together with others, agreed to pay and paid illegal kickbacks and bribes in the form of United States currency to New York Medicaid recipients, and submitted and caused the submission of false and fraudulent claims to New York Medicaid, through the MLTC plans, for the recipients' purported visits to Happy Family and Family Social and CDPAP services New York Medicaid recipients purportedly received through FI-1 and Responsible Care that were medically unnecessary, not provided and/or were induced by the payment of illegal kickbacks and bribes.

28.     Most of the New York Medicaid recipients enrolled at Happy Family and Family Social were paid illegal cash kickbacks and bribes and did not actually visit Happy Family or Family Social or receive CDPAP services arranged through Responsible Care on the purported dates of service as claimed to New York Medicaid/the MLTC plans.   In some instances, the Medicaid recipients were outside the United States on the purported dates of service.

29.     In furtherance of the scheme, the defendant ZAKIA KHAN hired the defendants AMRAN HASHMI and ANSIR ABASSI, who managed Happy Family and Family Social and oversaw marketers and recruiters who were paid illegal kickbacks and bribes in exchange for directing Medicaid recipients to Happy Family, Family Social and Responsible Care.   HASHMI and ABASSI also recruited their own Medicaid recipients, to whom they paid illegal cash kickbacks and bribes.

30.     In furtherance of the scheme, marketers attended medical evaluations with Medicaid recipients and pretended to be the Medicaid recipients' family member or caregiver so that the MLTC plans approved the Medicaid recipients for services.

31.     In exchange for illegal kickbacks and bribes, the defendants ELAINE ANTAO, OMNEAH HAMDI and MANAL WASEF referred Medicaid recipients to Happy Family, Family Social and/or Responsible Care.   As marketers and recruiters, ANTAO, HAMDI and WASEF were responsible for creating fictious sign-in sheets that falsely indicated that the Medicaid recipients they referred had attended Happy Family and Family Social, when, in fact, the Medicaid recipients had not attended Happy Family and Family Social.

32.     In or about and between May 2023 and July 2024, the defendants ZAKIA KHAN, ANSIR ABASSI, AMRAN HASHMI and SEEMA MEMON, and others, paid Individual-1 illegal kickbacks and bribes ranging from approximately $500 to $1,500 per month in return for permitting them to bill Individual-1's MLTC plan for CDPAP services that were not provided.

33.     In furtherance of the scheme, the defendants ZAKIA KAHN and AMRAN HASHMI fraudulently listed Co-Conspirator-1 as Individual-1's home health aide and submitted or caused the submission of false and fraudulent claims to MLTC Plan-1, through Responsible Care, for CDPAP services that Co-Conspirator-1 never provided and Individual-1 never received.

34.     To promote the scheme and conceal the proceeds derived from it, the defendants ZAKIA KHAN, ANSIR ABASSI, ELAINE ANTAO, OMNEAH HAMDI and AHSAN IJAZ, together with others, engaged in financial transactions involving proceeds from the scheme to defraud Medicaid and the MLTC plans by using various business entities to disguise their receipt and payment of illegal kickbacks and bribes.   For example, to obtain cash for paying Medicaid recipients illegal kickbacks and bribes and for paying marketers and recruiters illegal kickbacks and bribes, KHAN and IJAZ wrote checks from Happy Family,

Family Social and Responsible Care to business entities, including RIIA, which Co-Conspirator-2 controlled; Tanwee Services, which KHAN controlled; Abassi Corp., which ABASSI controlled; All Type Services, which ANTAO controlled; and Eyeconic World, which HAMDI controlled.

35.      In or about and between October 2017 and July 2024, the defendants ZAKIA KHAN, ANSIR ABASSI, ELAINE ANTAO, OMNEAH HAMDI, AMRAN HASHMI, AHSAN IJAZ, SEEMA MEMON and MANAL WASEF caused Happy Family and Family Social to submit claims to MLTC plans in the amount of approximately $68 million for services that were not provided, were not provided as billed and/or were induced by the payment of illegal cash kickbacks and bribes.

## COUNT ONE
(Conspiracy to Commit Health Care Fraud)

36.      The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

37.      In or about and between October 2017 and July 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZAKIA KHAN, ANSIR ABASSI, also known as "Zaib Abassi" and "Ansir Zaib," ELAINE ANTAO, also known as "Aleena," OMNEAH HAMDI, AMRAN HASHMI, AHSAN IJAZ, SEEMA MEMON and MANAL WASEF, together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud one or more health care benefit program as defined in Title 18, United States Code, Section 24(b), to wit: New York Medicaid, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, New York

Medicaid, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNTS TWO THROUGH FOUR
(Health Care Fraud)

38.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

39.     In or about and between October 2017 and July 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZAKIA KHAN and AMRAN HASHMI, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud one or more health care benefit program as defined in Title 18, United States Code, Section 24(b), to wit: New York Medicaid, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, New York Medicaid, in connection with the delivery of and payment for health care benefits, items and services.

40.     On or about the dates specified below, within the Eastern District of New York and elsewhere, the defendants ZAKIA KHAN and AMRAN HASHMI, together with others, did submit and cause to be submitted the following false and fraudulent claims to MLTC Plan-1, in an attempt to execute, and in execution of, the scheme described above:

| Count | New York Medicaid Recipient | Approximate Date of Claim | Approximate Amount Billed to MLTC Plan-1 |
|-------|------------------------------|----------------------------|-------------------------------------------|
| TWO   | Individual-1                 | October 28, 2023           | $125.64                                   |
| THREE | Individual-1                 | October 29, 2023           | $125.64                                   |
| FOUR  | Individual-1                 | October 30, 2023           | $125.64                                   |

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

COUNT FIVE
(Conspiracy to Defraud the United States and Pay Health Care Kickbacks)

41.    The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

42.    In or about and between October 2017 and July 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZAKIA KHAN, ANSIR ABASSI, also known as "Zaib Abassi" and "Ansir Zaib," ELAINE ANTAO, also known as "Aleena," OMNEAH HAMDI, AMRAN HASHMI, AHSAN IJAZ, SEEMA MEMON and MANAL WASEF, together with others, did knowingly and willfully conspire:

(a)    to defraud the United States, by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of CMS, an agency of the United States, in its administration of New York Medicaid;

(b)    to solicit and receive any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring one or more individuals, to wit: New York Medicaid recipients, for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part

under a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A);

(c)     to offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such persons to refer one or more individuals, to wit: New York Medicaid recipients, for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

(d)     to offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such persons to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering any good, facility, service and item for which payment may have been made in whole and in part under a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(B).

43.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ZAKIA KHAN, ANSIR ABASSI, also known as "Zaib Abassi" and "Ansir Zaib," ELAINE ANTAO, also known as "Aleena," OMNEAH HAMDI, AMRAN HASHMI, AHSAN IJAZ, SEEMA MEMON and MANAL WASEF, together with others, did commit and cause the commission of, among others, at least one of the following:

<u>OVERT ACTS</u>

(a)     On or about October 10, 2017, KHAN signed a contract with MLTC Plan-1.

(b)     On or about September 16, 2020, IJAZ signed a letter submitted to MLTC Plan-1 denying allegations that any Family Social members were paid cash.

(c)     On or about August 18, 2022, ANTAO deposited a check from Happy Family in the approximate amount of $17,000 into the All Type Services Account.

(d)     On or about January 27, 2023, HAMDI deposited a check in the approximate amount of $7,000 from Happy Family into the Eyeconic World Account.

(e)     On or about June 26, 2023, MEMON paid Individual-1 approximately $517 in United States currency as an illegal kickback and bribe for CDPAP services that were not provided.

(f)     On or about September 26, 2023, ABASSI placed a phone call to Individual-1 to discuss, among other things, the illegal cash kickbacks and bribes that MEMON owed Individual-1.

(g)     On or about October 1, 2023, HASHMI spoke with Individual-1 by phone and instructed Individual-1 to talk to KHAN about switching Individual-1's CDPAP services to Responsible Care.

(h)     On or about December 11, 2023, KHAN paid Individual-1 approximately $1,525 in United States currency as an illegal kickback and bribe for CDPAP services that were not provided.

(i)     On or about January 18, 2024, KHAN paid Individual-1 approximately $1,250 in United States currency as an illegal kickback and bribe for CDPAP services that were not provided.

(j)      On or about June 7, 2024, HASHMI paid Individual-1 approximately $2,415 in United States currency as an illegal kickback and bribe for CDPAP services that were not provided.

(k)      On or about June 26, 2024, WASEF received approximately $60,000 in United States currency from Co-Conspirator-3, to be used for the payment of illegal kickbacks and bribes to Medicaid recipients.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

### COUNTS SIX THROUGH EIGHT
(Paying Health Care Kickbacks)

44.      The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

45.      On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants ZAKIA KHAN, AMRAN HASHMI and SEEMA MEMON, together with others, did knowingly and willfully offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons, to wit: New York Medicaid recipients, to induce such New York Medicaid recipients to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering goods, facilities, services and items for which payment may have been made in whole and in part under a Federal health care program, to wit: New York Medicaid, as set forth below:

| Count | Defendant | Approximate Date | Kickback |
|-------|-----------|------------------|----------|
| SIX | MEMON | June 26, 2023 | Cash payment in the amount of approximately $517 to Individual-1 |
| SEVEN | KHAN | January 18, 2024 | Cash payment in the amount of approximately $1,250 to Individual-1 |
| EIGHT | HASHMI | June 7, 2024 | Cash payment in the amount of approximately $2,415 to Individual-1 |

(Title 42, United States Code, Section 1320a-7b(b)(2)(B); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT NINE
(Conspiracy to Commit Money Laundering)

46.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

47.     In or about and between October 2017 and July 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZAKIA KHAN, ANSIR ABASSI, also known as "Zaib Abassi" and "Ansir Zaib," ELAINE ANTAO, also known as "Aleena," OMNEAH HAMDI and ASHAN IJAZ, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: acts and activities constituting an offense involving a Federal health care offense, in violation of Title 18, United States Code, Sections 371, 1347 and 1349, and Title 42, United States Code, Sections 1320a-7b(b)(1)(A), (b)(2)(A) and (b)(2)(B), knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and

the control of the proceeds of one or more such specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNTS TEN THROUGH FOURTEEN
(Money Laundering)

48. The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

49. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants ZAKIA KHAN, ANSIR ABASSI, also known as "Zaib Abassi" and "Ansir Zaib," ELAINE ANTAO, also known as "Aleena," OMNEAH HAMDI and AHSAN IJAZ, together with others, did knowingly and intentionally conduct, and attempt to conduct, one or more financial transactions in and affecting interstate commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: acts and activities constituting an offense involving a Federal health care offense, in violation of Title 18, United States Code, Sections 371, 1347 and 1349, and Title 42, United States Code, Sections 1320a-7b(b)(1)(A), (b)(2)(A) and (b)(2)(B), knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of one or more such specified unlawful activities:

| Count | Defendant | Approximate Date of Transaction | Description of Transaction |
|---|---|---|---|
| TEN | KHAN | June 23, 2022 | Transfer by check of approximately $29,200 from the Happy Family Account to RIIA |

| Count | Defendant | Approximate Date of Transaction | Description of Transaction |
|-------|-----------|-------------------------------|----------------------------|
| ELEVEN | ANTAO | January 30, 2023 | Withdrawal of approximately $9,000 in cash from the All Type Services Account |
| TWELVE | IJAZ | January 31, 2024 | Transfer by check of approximately $3,750 from the Responsible Care Account to Tanwee Services |
| THIRTEEN | ABASSI | April 23, 2024 | Withdrawal of approximately $5,000 from the Abassi Corp. Account |
| FOURTEEN | HAMDI | May 10, 2024 | Withdrawal of approximately $2,000 from the Eyeconic World Account |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH EIGHT

50.     The United States hereby gives notice to the defendants that, upon their

conviction of any of the offenses charged in Counts One through Eight, the government will seek

forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any

person convicted of a Federal health care offense to forfeit property, real or personal, that

constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission

of such offenses, including but not limited to:

(a)     approximately $685,200.00 seized by law enforcement on or about

July 1, 2024, from J.P. Morgan Chase Bank account number XXXXX1706, held in the name of

or for the benefit of Tanwee Services, and all proceeds traceable thereto;

(b)     approximately $334,886.00 seized by law enforcement on or about

July 1, 2024, from J.P. Morgan Chase Bank account number XXXXX5371, held in the name of

or for the benefit of Aleena Ventures, Inc., and all proceeds traceable thereto;

        (c)      approximately $3,971,433.38 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX0940, held in the name of or for the benefit of Happy Family Social Adult Center, Inc., and all proceeds traceable thereto;

        (d)      approximately $30,000.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX0363, held in the name of or for the benefit of Emman, Inc., and all proceeds traceable thereto;

        (e)      approximately $232,880.32 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX1530, held in the name of or for the benefit of Zakia Kahn, and all proceeds traceable thereto;

        (f)      approximately $25,000.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX1522, held in the name of or for the benefit of Zakia Khan, and all proceeds traceable thereto;

        (g)      approximately $65,000.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX0959, held in the name of or for the benefit of Happy Family Social Adult Center, Inc., and all proceeds traceable thereto;

        (h)      approximately $18,800.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX2244, held in the name of or for the benefit of Empire Care Agency, and all proceeds traceable thereto;

        (i)      approximately $77,691.91 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX3287, held in the name of or for the benefit of Responsible Care Staffing, Inc., and all proceeds traceable thereto;

(j)    approximately $49,600.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX4016, held in the name of or for the benefit of Happi Care, Inc., and all proceeds traceable thereto;

(k)    approximately $750,421.00 seized by law enforcement on or about July 1, 2024, from Capital One, N.A. account number XXXXXX8742, held in the name of or for the benefit of A.N. All Type Services, Inc., and all proceeds traceable thereto;

(l)    approximately $563,185.00 seized by law enforcement on or about July 1, 2024, from Capital One, N.A. account number XXXXXX8862, held in the name of or for the benefit of Zakaleens 786 Touch & Glow, Inc., and all proceeds traceable thereto;

(m)    approximately $969,030.00 seized by law enforcement on or about July 1, 2024, from Santander Bank, N.A. account number XXXXXX8897, held in the name of or for the benefit of Riia Consulting Corp., and all proceeds traceable thereto;

(n)    one 2024 grey Mercedes-Benz sport utility vehicle, bearing vehicle identification number 4JGFF5KE0RB141646, seized by law enforcement on or about July 1, 2024, in Brooklyn, New York;

(o)    the real property and premises located at 591 Huguenot Ave., Staten Island, New York 10312, together with its appurtenances, improvements, fixtures, easements, furnishings and attachments thereon, as well as all leases, rents and profits therefrom, and all proceeds traceable thereto;

(p)    the real property and premises located at 110 Forsyth St., #3, New York, New York 10002, together with its appurtenances, improvements, fixtures, easements, furnishings and attachments thereon, as well as all leases, rents and profits therefrom, and all proceeds traceable thereto; and

(q)    assorted jewelry, including pendants, rings, earrings, bracelets, necklaces, watches, and metal bars seized on or about July 1, 2024, in Brooklyn, New York.

51.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS NINE THROUGH FOURTEEN

52.     The United States hereby gives notice to the defendants that, upon their

conviction of any of the offenses charged in Counts Nine through Fourteen, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which

requires any person convicted of such offenses to forfeit any property, real or personal, involved

in such offenses, or any property traceable to such property, including but not limited to:

(a)     approximately $685,200.00 seized by law enforcement on or about

July 1, 2024, from J.P. Morgan Chase Bank account number XXXXX1706, held in the name of

or for the benefit of Tanwee Services, and all proceeds traceable thereto;

(b)     approximately $334,886.00 seized by law enforcement on or about

July 1, 2024, from J.P. Morgan Chase Bank account number XXXXX5371, held in the name of

or for the benefit of Aleena Ventures, Inc., and all proceeds traceable thereto;

(c)     approximately $3,971,433.38 seized by law enforcement on or

about July 1, 2024, from Citibank, N.A. account number XXXXXX0940, held in the name of or

for the benefit of Happy Family Social Adult Center, Inc., and all proceeds traceable thereto;

(d)     approximately $30,000.00 seized by law enforcement on or about

July 1, 2024, from Citibank, N.A. account number XXXXXX0363, held in the name of or for the

benefit of Emman, Inc., and all proceeds traceable thereto;

(e)     approximately $232,880.32 seized by law enforcement on or about

July 1, 2024, from Citibank, N.A. account number XXXXXX1530, held in the name of or for the

benefit of Zakia Kahn, and all proceeds traceable thereto;

(f)     approximately $25,000.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX1522, held in the name of or for the benefit of Zakia Khan, and all proceeds traceable thereto;

(g)     approximately $65,000.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX0959, held in the name of or for the benefit of Happy Family Social Adult Center, Inc., and all proceeds traceable thereto;

(h)     approximately $18,800.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX2244, held in the name of or for the benefit of Empire Care Agency, and all proceeds traceable thereto;

(i)     approximately $77,691.91 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX3287, held in the name of or for the benefit of Responsible Care Staffing, Inc., and all proceeds traceable thereto;

(j)     approximately $49,600.00 seized by law enforcement on or about July 1, 2024, from Citibank, N.A. account number XXXXXX4016, held in the name of or for the benefit of Happi Care, Inc., and all proceeds traceable thereto;

(k)     approximately $750,421.00 seized by law enforcement on or about July 1, 2024, from Capital One, N.A. account number XXXXXX8742, held in the name of or for the benefit of A.N. All Type Services, Inc., and all proceeds traceable thereto;

(l)     approximately $563,185.00 seized by law enforcement on or about July 1, 2024, from Capital One, N.A. account number XXXXXX8862, held in the name of or for the benefit of Zakaleens 786 Touch & Glow, Inc., and all proceeds traceable thereto;

(m)     approximately $969,030.00 seized by law enforcement on or about July 1, 2024, from Santander Bank, N.A. account number XXXXXX8897, held in the name of or for the benefit of Riia Consulting Corp., and all proceeds traceable thereto;

(n)     one 2024 grey Mercedes-Benz sport utility vehicle, bearing vehicle identification number 4JGFF5KE0RB141646, seized by law enforcement on or about July 1, 2024, in Brooklyn, New York;

(o)     the real property and premises located at 591 Huguenot Ave., Staten Island, New York 10312, together with its appurtenances, improvements, fixtures, easements, furnishings and attachments thereon, as well as all leases, rents and profits therefrom, and all proceeds traceable thereto;

(p)     the real property and premises located at 110 Forsyth St., #3, New York, New York 10002, together with its appurtenances, improvements, fixtures, easements, furnishings and attachments thereon, as well as all leases, rents and profits therefrom, and all proceeds traceable thereto; and

(q)     assorted jewelry, including pendants, rings, earrings, bracelets, necklaces, watches, and metal bars seized on or about July 1, 2024, in Brooklyn, New York.

53.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture

allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

A TRUE BILL

/s/
FOREPERSON

*By David Pitluck, Assistant U.S. Attorney*

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*By P.J. Campbell, DOJ Trial Attorney*

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE